## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF ALABAMA
## SOUTHERN DIVISION

| | | |
|---|---|---|
| **JAMES MARQUEZ and KENNEDY** | ) | |
| **DIXON,** *individually and on behalf* | ) | |
| *of others similarly situated,* | ) | |
|     **Plaintiffs,** | ) | |
| | ) | |
| **v.** | ) | **CIVIL ACTION NO. 17-00060-CG-N** |
| | ) | |
| **GNS & ASSOCIATES, INC.,** *et al.* | ) | |
|     **Defendants.** | ) | |

### REPORT AND RECOMMENDATION

This action is before the Court on the motion to remand under 28 U.S.C. § 1447(c) (Doc. 18) filed by the Plaintiffs. The Court has referred the motion (Doc. 18) to the undersigned Magistrate Judge for entry of a recommendation as to the appropriate disposition, in accordance with 28 U.S.C. § 636(b)(1)(B)-(C), Federal Rule of Civil Procedure 72(b), and S.D. Ala. GenLR 72(a)(2)(S). *See* S.D. Ala. GenLR 72(b); (3/2/2017 electronic reference); (Doc. 22 at 4). Defendant Oasis Legal Finance, LLC ("OLF") has timely filed a response (Doc. 23) to the motion, and the Plaintiffs have timely filed a reply (Doc. 24) to the response. The motion is now under submission (*see* Doc. 19) and is ripe for disposition.

Previously, with the consent of the parties, the undersigned granted the motion in part and remanded the lone claim against Defendant GNS & Associates, Inc. (*See* Doc. 31). Upon consideration, the undersigned **RECOMMENDS** that the remainder of the Plaintiffs' motion to remand (Doc. 18) be **GRANTED**.

### I.    BACKGROUND

Plaintiff James Marquez initiated this civil action in the Circuit Court of Mobile County, Alabama (Case No. 02-CV-2014-000248.00). On January 4, 2017,

Marquez filed the First Amended Class Action Complaint ("FACAC") (Doc. 1-1 at 3 – 19), currently the operative pleading in this case, which added Plaintiff Kennedy Dixon.   Count I of the FACAC, asserting a claim for workers' compensation benefits by Marquez, individually, against GNS & Associates, has been remanded to state court.   (*See* Doc. 31).   Counts II through V, designated "Class Claims" brought under Alabama Rule of Civil Procedure 23, are asserted by Plaintiffs Marquez and Kennedy, on behalf of themselves and others similarly situated, against Defendants OLF and Oasis Financial, LLC (collectively, "Oasis").

Per the allegations in the FACAC (Doc. 1-1), Oasis, as part of the normal course of its business, enters into "Purchase Agreements" with its customers under which it advances sums to the customer in exchange for the right to receive an amount, determined by formula, from the proceeds that customers receive as a result of their legal claims, which include claims under the Alabama Workers' Compensation Act, Ala. Code § 25-5-5, *et seq.*   Both Marquez and Dixon have entered into such "Purchase Agreements" with Oasis for their Alabama workers' compensation claims and seek to represent other Oasis customers similarly situated as a class.   More specifically, Marquez seeks to represent a sub-class of "[a]ll persons with a claim for benefits under the Alabama Workers' Compensation Act…who entered into a Purchase Agreement with Oasis, and who have not yet repaid the amounts Oasis has claimed are due pursuant to the terms of that Purchase Agreement" – dubbed the "Injunctive Sub-Class" – while Kennedy seeks to represent a proposed sub-class of Alabama workers' compensation claimants "who entered into a Purchase Agreement with Oasis, and who repaid the amounts due pursuant to the terms of that Purchase Agreement from the proceeds of the

settlement or judgment of their workers' compensation claim in the 6 years preceding the filing of" the FACAC – dubbed the "Damages Sub-Class." Specifically excluded from the proposed class are "persons whose claims for benefits under the Alabama Workers' Compensation Act have been adjudicated to a final determination that the person was not entitled to a monetary recovery under the Alabama Workers' Compensation Act."

Count II of the FACAC asserts a claim for declaratory judgment on behalf of all class members that the Purchase Agreements at issue are void *ab initio* under Ala. Code §§ 25-5-231 and 25-5-86(2). Count III demands an accounting of all outstanding sums claimed by Oasis under its Purchase Agreements with the Injunctive Sub-Class, and of all sums accepted by Oasis under its Purchase Agreements with the Damages Sub-Class. Count IV asserts a claim for "willfulness and wantonness," alleging that Oasis entered into the Purchase Agreements at issue with actual knowledge that they violated Alabama public policy. Count V demands that Oasis be enjoined from enforcing its Purchase Agreements with the Injunctive Sub-Class.

On February 3, 2017, OLF removed this case to this Court under the removal provision of the Class Action Fairness Act, Pub. L. No. 109-2 ("CAFA"), 28 U.S.C. § 1453(b). The case against GNS & Associates, Inc. has since been remanded to state court. (*See* Doc. 31). Thus, only the claims against Oasis remain pending in this Court.

## II.  ANALYSIS

The Plaintiffs raise three grounds in support of remanding its Class Claims. After reordering the arguments for flow, the undersigned will address each in turn.

### a.   Amount in Controversy

One requisite for CAFA subject matter jurisdiction is that "the matter in controversy exceed[] the sum or value of $5,000,000, exclusive of interest and costs…"  28 U.S.C. § 1332(d)(2).   The Plaintiffs argue that OLF cannot sufficiently demonstrate this requisite amount in controversy.

In *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014), the Supreme Court held that "no antiremoval presumption attends cases invoking CAFA, which Congress enacted to facilitate adjudication of certain class actions in federal court."  135 S. Ct. at 554.  In light of this holding, this Court "may no longer rely on any presumption in favor of remand in deciding CAFA jurisdictional questions."   *Dudley v. Eli Lilly & Co.*, 778 F.3d 909, 912 (11th Cir. 2014).  However, "*Dart*—which did not involve a plaintiff's contest to the defendant's jurisdictional allegations—did not disrupt any of th[e following] pre-existing CAFA case law":

> [W]hen a notice of removal's allegations are disputed, the district court must find by the preponderance of the evidence, that the amount in controversy exceeds' the jurisdictional threshold … [T]he removing party bears the burden of proof to establish by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional minimum … [I]n making this calculation, a court may rely on evidence put forward by the removing defendant, as well as reasonable inferences and deductions drawn from that evidence. A removing defendant is not required to prove the amount in controversy beyond all doubt or to banish all uncertainty about it. Moreover, at the jurisdictional stage, the pertinent question is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover. The amount in controversy is not proof of the amount the plaintiff will recover. Rather, it is an estimate of the amount that will be put at issue in the course of the litigation … [J]urisdictional facts are evaluated as they stand at the time of removal.

*Id.* at 913 (11th Cir. 2014) (citations and quotations omitted).[1]

Correctly noting that the Plaintiffs' FACAC does not request a specific amount of damages for the Class Claims,[2] OLF alleges in its notice of removal that "[t]he value of the Alabama Agreements that the Plaintiffs and proposed class members ask the Court to declare void or enjoin alone exceeds $5,000,000."[3]   (Doc. 1

---

[1] At times, the Plaintiffs' briefing appears to fault OLF for failing to attach sufficient evidence of the amount in controversy to its notice of removal.   To be clear, OLF was not required to include <u>any</u> evidence of the amount in controversy with its notice. *See Dudley*, 778 F.3d at 912 (In *Dart*, "the plaintiff claimed that the amount-in-controversy submission came too late because it had not been included in the notice of removal, and the district court agreed. The Supreme Court did not. It held that 'when a defendant seeks federal-court adjudication, the defendant's amount-in-controversy allegation should be accepted when not contested by the plaintiff or questioned by the court.' In other words, all that is required is a 'short and plain statement of the grounds for removal,' including 'a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" (quoting *Dart*, 135 S. Ct. at 551-54) (citations omitted)).

[2] *See McGee v. Sentinel Offender Servs.*, LLC, 719 F.3d 1236, 1241 (11th Cir. 2013) (per curiam) ("Typically, we look to the complaint to establish the amount in controversy. McGee's complaint, however, does not plead a specific amount of damages. In this scenario, the removing defendant must prove by a preponderance of the evidence that the amount in controversy exceeds the jurisdictional requirement." (quotation omitted)).

[3] The Eleventh Circuit has

> held that "[f]or amount in controversy purposes, the value of injunctive or declaratory relief is the value of the object of the litigation measured from the plaintiff's perspective." *Morrison v. Allstate Indem. Co.,* 228 F.3d 1255, 1268 (11th Cir. 2000) (quotation marks omitted). Stated another way, the value of declaratory relief is "the monetary value of the benefit that would flow to the plaintiff if the [relief he is seeking] were granted." *Id.* For CAFA purposes, we aggregate the claims of individual class members and consider the monetary value that would flow to the entire class if declaratory relief were granted. *See* 28 U.S.C. § 1332(d)(6); *see also Cappuccitti v. DirecTV, Inc.,* 623 F.3d 1118, 1122

at 7, ¶ 19).   In support of this allegation, OLF includes with its notice a 28 U.S.C. § 1746 unsworn declaration of David Winkiel, OLF's Chief Technology Officer, which was executed on January 26, 2017, and represents, in relevant part, as follows: "Between January 4, 2011 and January 4, 2017, Oasis Legal entered into agreements in Alabama with James Marquez and Kennedy Dixon (the 'Alabama Agreements'), in addition to 738 other individuals … The value of the Alabama Agreements exceeds $5,000,000.00[.]   Oasis Legal collected approximately $4,045,683.00 from a portion of the Alabama Agreements that resolved between January 4, 2011 and January 4, 2017.   As of January 4, 2017, the total amount owed and unpaid on unresolved Alabama Agreements exceeded $1,844,803.00, including over $669,100.00 in funding…"[4]   (Doc. 1-2 at 3).   Thus, the amount in controversy under the Alabama Agreements referenced by Winkiel is $5,890,486.00.

---

(11th Cir. 2010). While absolute certainty is neither attainable nor required, the value of declaratory or injunctive relief must be "sufficiently measurable and certain" to satisfy the amount-in-controversy requirement. *Morrison,* 228 F.3d at 1269. That requirement is not satisfied if the value of the equitable relief is "too speculative and immeasurable." *Cohen v. Office Depot, Inc.,* 204 F.3d 1069, 1077 (11th Cir. 2000) (quotation marks omitted); *see also Leonard v. Enter. Rent a Car,* 279 F.3d 967, 973 (11th Cir. 2002).   It is a matter of degree.

*S. Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1315–16 (11th Cir. 2014) (citation omitted).

[4] Winkiel further avers that "the total amount owed and unpaid on unresolved Alabama Agreements…could total in excess of $2,213,110.00 as time passes without resolution."   (Doc. 1-2 at 3).   The undersigned disregards this speculation as to future amounts possibly owed for purposes of the present motion, as "jurisdictional facts are evaluated as they stand at the time of removal." *Dudley,* 778 F.3d at 912.

Correctly noting that the FACAC limits the proposed class to Oasis customers "with a claim for benefits under the Alabama Workers' Compensation Act,"[5] the Plaintiffs argue that Winkiel's declaration does not specify that the referenced Alabama Agreements are limited to those with customers who had such claims. Citing information gleaned from OLF's website, the Plaintiffs claim that OLF "provides legal funding for many types of cases other than those involving workers' compensation claims…includ[ing]: auto accidents, civil rights cases, construction negligence, premises negligence, wrongful death, Jones Act cases, FELA cases, and pedestrian injuries." (Doc. 18 at 19 (citing https://www.oasisfinancial.com/en/pre-settlement-funding (last visited by the Plaintiffs Feb. 23, 2017)). Because the referenced Alabama Agreements may include those with Oasis customers who did not have Alabama workers' compensation claims, the Plaintiffs argue, Winkiel's declaration does not show by a preponderance of the evidence that the amount in controversy for the proposed class exceeds $5,000,000, exclusive of interest and costs.

In response, OLF does not contest the information the Plaintiffs obtained from its website but does submit a supplemental § 1746 declaration executed by Winkiel on March 10, 2017, which references the amounts set forth in his January 26, 2017 declaration and clarifies that, "[i]n calculating these amounts, [Winkiel] considered

---

[5] Count II demands "compensatory damages" for Dixon and the Damages Sub-Class members "in excess of the jurisdiction limits of [the state circuit] Court, but in all events less than $75,000.00 per class member." (Doc. 1-1 at 13). Count IV contains a similar damages demand on behalf of both named Plaintiffs and all proposed class members. (*Id.* at 14 – 15).

only Alabama Purchase Agreements with Oasis customers who had pending workers' compensation claims at the times that they entered into the Agreements." (Doc. 23-2 at 3).   The Plaintiffs reply that this clarification still does not sufficiently evidence the requisite amount in controversy because "customers who had pending workers' compensation claims at the times that they entered into the Agreements" could include customers "whose claims for benefits under the Alabama Workers' Compensation Act have been adjudicated to a final determination that the person was not entitled to a monetary recovery under the Alabama Workers' Compensation Act[,]" a group expressly excluded from the Plaintiffs' proposed class (*see* Doc. 1-1 at 8).   However, the Purchase Agreements at issue expressly state that OLF "shall receive nothing" in the event a customer "recovers nothing" from his or her legal claim.   (*See* Doc. 3-2 at 2).   Therefore, the amounts evidenced by Winkiel's declarations would necessarily exclude those customers found "not entitled to a monetary recovery," because nothing would have either been collected or would be owing on those agreements.

As such, the undersigned finds that OLF has proven the requisite CAFA amount in controversy by a preponderance of the evidence.   *Cf. S. Florida Wellness, Inc. v. Allstate Ins. Co.*, 745 F.3d 1312, 1316 (11th Cir. 2014) ("In this case, Allstate has carried its burden of establishing an amount in controversy that exceeds $5 million…The affidavit establishes that the declaratory judgment Wellness seeks will determine whether Allstate made insufficient payments on more than 1.6 million 'bills for payment or reimbursement,' with the amount of the insufficiency exceeding

$68 million, which it will owe the putative class members. That is the amount in controversy, and it is far above the $5 million threshold set by CAFA." (citation omitted)).

### b.  OLF's Citizenship

The Plaintiffs also argue that remand is warranted because OLF, a limited liability company (i.e. an unincorporated artificial entity), has failed to allege the citizenships of all its members.  It is true that, for purposes of general diversity jurisdiction under 28 U.S.C. § 1332(a), "the citizenship of an artificial, unincorporated entity generally depends on the citizenship of all the members composing the organization."  *Rolling Greens, MHP, L.P. v. Comcast SCH Holdings, L.L.C.*, 374 F.3d 1020, 1021 (11th Cir. 2004) (per curiam) (citing *Carden v. Arkoma Assocs.*, 494 U.S. 185, 195-96 (1990)).  *See also Americold Realty Trust v. Conagra Foods, Inc.*, 136 S. Ct. 1012, 1016 (2016) ("So long as … an entity is unincorporated, we apply our 'oft-repeated rule' that it possesses the citizenship of all its members." (reaffirming *Carden*)).  Both the Plaintiffs and OLF appear be under the impression that this rule applies in the CAFA context.

However, for purposes of CAFA jurisdiction, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized."  28 U.S.C. § 1332(d)(10). *See also Lowery v. Ala. Power Co.*, 483 F.3d 1184, 1200 n.40 (11th Cir. 2007) ("Section 1332(d)(10) sets forth how the citizenship of unincorporated associations is treated for purposes of CAFA's jurisdictional and removal provisions…"); *Vodenichar*

*v. Halcon Energy Properties, Inc.*, 733 F.3d 497, 504 n.2 (3d Cir. 2013) ("Under CAFA, suits brought by unincorporated associations are treated like suits by corporations in that the citizenship of the association for diversity purposes is determined by the entities' principal place of business and not by the citizenship of its members. 28 U.S.C. § 1332(d)(10)." (citation and quotation omitted)). OLF's notice of removal alleges that it was organized under Delaware law and has its principal place of business in Illinois (*se* Doc. 1 at 5, ¶ 13), and the Plaintiffs have not challenged those allegations. Because both named natural person Plaintiffs are alleged to be "citizens of Alabama" (*see id.*, ¶ 12), also without challenge, the minimal diversity of citizenship required by CAFA is satisfied. *See* 28 U.S.C. § 1332(d)(2)(A) (granting CAFA jurisdiction where "any member of a class of plaintiffs is a citizen of a State different from any defendant"); *Lowery*, 483 F.3d at 1194 n.24 ("Following the enactment of CAFA, federal courts no longer look to the familiar requirements of 28 U.S.C. § 1332(a) to determine if the court has diversity jurisdiction over certain class actions. Instead, federal courts now look to § 1332(d)(2). Prior to CAFA, the Supreme Court had interpreted the 'diversity' requirement of § 1332(a) to require that each named member of the plaintiff class be diverse from each of the defendants…The new § 1332(d) replaces [that] modified 'complete diversity' requirement with a 'minimal diversity' requirement under which, for purposes of establishing jurisdiction, only one member of the plaintiff class—named or unnamed—must be diverse from any one defendant. § 1332(d)(2).").[6]

---

[6]    The Plaintiffs do not dispute, and the undersigned finds, that the Class

### c.  Unremovability

Each of the Plaintiffs' Class Claims is premised on the allegation that Oasis's Purchase Agreements with the Plaintiffs and proposed class members violate two provisions of the Alabama Workers' Compensation Act, Ala. Code § 25-5-1, *et seq.*: (1)

---

Claims are a "class action" for purposes of CAFA.  *See* 28 U.S.C. § 1332(d)(1)(B) ("In this subsection[,] the term 'class action'" means any civil action filed under rule 23 of the Federal Rules of Civil Procedure or similar State statute or rule of judicial procedure authorizing an action to be brought by 1 or more representative persons as a class action…"); 28 U.S.C. § 1453(a) ("In this section, the terms 'class', 'class action', 'class certification order', and 'class member' shall have the meanings given such terms under section 1332(d)(1)."). Thus, original jurisdiction under § 1332(d)(2)(A) is established, and removal was proper under § 1453(b).  *See Lowery*, 483 F.3d at 1195 ("[W]e observe that CAFA's jurisdictional and procedural provisions operate in tandem with regard to removal. The availability of federal jurisdiction created by CAFA in § 1332(d), and the Act's procedural removal provisions under § 1453, both depend on whether a given suit constitutes a 'class action' as defined by the statute.").

Though no party has raised the issue, the fact that this civil action included non-class claims at the time of removal does not appear to bar removal of the entire action under CAFA, or at least does not require remand *sua sponte* of the pending claims. *See In re Surinam Airways Holding Co.*, 974 F.2d 1255, 1258-60 (11th Cir. 1992) ("Under § 1441(d), '[a]ny civil action brought in State court against a foreign state' may be removed to federal court by the foreign state… [T]he language and legislative history of § 1441(d) lead us to conclude that, where a claim has been filed against a foreign state, Congress did not intend removal jurisdiction to be limited to some subset of the claims or parties involved in that action… Once Surinam Airways invoked federal jurisdiction by seeking removal under § 1441(d), the district court had jurisdiction over the entire 'civil action,' encompassing both the third party claims[ against 'foreign state' party Surinam Airways] and the main claims asserted by the plaintiffs[ against non-foreign state defendants]."); *Lowery*, 483 F.3d at 1196-98 ("In light of that expansive construction of the removal provisions, we conclude that the district court erred in holding that the pre-CAFA defendants were not properly included in Alabama Power's removal. Because we read CAFA's jurisdictional and procedural removal provisions to relate to the 'class action' and not particular claims, the removal of the claims against all the defendants either stands or falls as a whole." (finding reasoning in *Surinam Airways* "analogous" on the issue)).  Similarly, the fact that certain claims in an action are unremovable under § 1445(c) does not require that an entire case be remanded.  *Lamar v. Home Depot*, 907 F. Supp. 2d 1311 (S.D. Ala. 2012) (Steele, C.J.).

Ala. Code § 25-5-231, which states that "[a]ny person, other than a beneficiary under this chapter, who for a consideration takes or accepts from an employee an assignment of his claim or award or judgment for, or agreement to pay, compensation, or who accepts or takes same as security for a loan or a debt, or who takes a power of attorney to collect the same, retaining any interest in the amount to be collected, shall be guilty of a misdemeanor[;]" and (2) Ala. Code § 25-5-86(2), which provides that "[c]laims for compensation, awards, judgments, or agreements to pay compensation owed by an injured employee or his or her dependent shall not be assignable and shall be exempt from seizure or sale or garnishment for the payment of any debt or liability."   The Plaintiffs thus argue that, notwithstanding CAFA, all of their Class Claims arise under Alabama's workers' compensation laws and are therefore unremovable under 28 U.S.C. § 1445(c), which provides that a "civil action in any State court arising under the workmen's compensation laws of such State may not be removed to any district court of the United States."[7]   OLF

---

[7] Unlike other circuits, *see Formosa v. Lowe's Home Centers, Inc.*, 806 F. Supp. 2d 1181, 1185 (N.D. Ala. 2011) (noting that the "Second, Fourth, Fifth, Eighth, and Ninth Circuits have held that the wrongful removal of a case in violation of an anti-removal provision is procedural in nature and does not create a substantive jurisdictional defect" (citing cases)); *Belyea v. Fla., Dep't of Revenue*, 859 F. Supp. 2d 1272, 1274 (N.D. Fla. 2012) ("With one exception, every circuit that has addressed the issue has held that the failure to make a timely objection waives a § 1445(c) objection to removal." (citing cases))*,* the Eleventh Circuit appears to treat § 1445(c)'s removal bar as jurisdictional rather than procedural in nature.  *See Reed v. Heil Co.*, 206 F.3d 1055, 1061 (11th Cir. 2000) ("federal court lacks subject matter jurisdiction to entertain" claim covered by § 1445(c)); *Alansari v. Tropic Star Seafood Inc.*, 388 F. App'x 902, 905-06 (11th Cir. 2010) (per curiam) (unpublished) (applying *Reed* in holding that § 1445(c) deprived district court of subject matter jurisdiction over Florida workers' compensation retaliation claim, and thus that remand was not precluded by fact that plaintiff brought motion to remand more than 30 days after

argues that § 1445(c) is inapplicable to CAFA cases, and alternatively that the Plaintiffs' Class Claims do not "arise under" Alabama workers' compensation laws.

## 1.    *Section 1445(c) Applies to CAFA Removal*

"An explicit repeal occurs when the later statute explicitly identifies the earlier statute it is repealing.    Congress can accomplish this identification by citing the earlier statute or referring to its subject matter…"    *Miccosukee Tribe of Indians of Fla. v. U.S. Army Corps of Eng'rs*, 619 F.3d 1289, 1296 (11th Cir. 2010) (citation omitted).    "If it does not, a statute may still sometimes effect a repeal through the use of a general repealing clause.    One example of such a clause is '[n]otwithstanding any other Federal law.' "    *Id.* at 1297 (citation and quotation omitted).    CAFA's removal statute, § 1453, does not cite § 1445(c), reference § 1445(c)'s subject matter as being repealed, or contain a general repealing clause. *Compare* 28 U.S.C. § 1453(b) ("A class action may be removed to a district court of the United States in accordance with section 1446 (except that the 1-year limitation under section 1446(c)(1) shall not apply), without regard to whether any defendant is a citizen of the State in which the action is brought, except that such action may be removed by any defendant without the consent of all defendants."), *with Fed. Reserve Bank of Atlanta v. Thomas*, 220 F.3d 1235, 1245 n.9 (11th Cir. 2000) ("Although

---

removal).    Some district courts have expressed doubt as to whether *Reed*'s determination that § 1445(c) implicates subject matter jurisdiction is binding precedent in this Circuit.    *See, e.g.*, *Lamar*, 907 F. Supp. 2d at 1313 n.4.    However, because the Plaintiffs moved to remand on the basis of § 1445(c) within 30 days of removal, *see* 28 U.S.C. § 1447(c) ("A motion to remand the case on the basis of any defect other than lack of subject matter jurisdiction must be made within 30 days after the filing of the notice of removal under section 1446(a)."), it is unnecessary to decide here whether § 1445(c) is jurisdictional in nature.

actions arising under state worker's compensation statutes are ordinarily unremovable, 28 U.S.C. § 1445(c), the removal right granted by section 632 exists '[n]otwithstanding any other provision of law....' 12 U.S.C. § 632.").  Accordingly, the undersigned finds that CAFA did not explicitly repeal § 1445(c).

"A statute effecting an implied repeal, also known as a repeal by implication or implicit repeal, does not identify the statute it is repealing.  Nor does it have a general repealing clause, like the notwithstanding clause at issue here. What is key is the legislature's demonstration of intent to repeal a pre-existing law.  Congress's intent to effect an implied repeal can be inferred when a later statute conflicts with or is repugnant to an earlier statute; or when a newer statute covers the whole subject of the earlier one, and clearly is intended as a substitute." *Miccosukee Tribe*, 619 F.3d at 1299 (citation and footnote omitted).

> But "[t]he cardinal rule is that repeals by implication are not favored." *Posadas*[ *v. Nat'l City Bank of N.Y.*], 296 U.S. [497,] 503, 56 S. Ct. 349[, 80 L. Ed. 351 (1936)]; *accord TVA v. Hill,* 437 U.S. 153, 189, 98 S. Ct. 2279, 57 L. Ed. 2d 117 (1978); *Aldana v. Del Monte Fresh Produce, N.A., Inc.,* 416 F.3d 1242, 1251 (11th Cir. 2005) (per curiam); *see Samuels v. District of Columbia,* 770 F.2d 184, 194 n.7 (D.C. Cir.1985) ("[R]epeals [by implication] are strongly disfavored on the ground that Congress is normally expected to be aware of its previous enactments and to provide a clear statement of repeal if it intends to extinguish an extant remedy."). We apply a strong presumption against finding repeals by implication precisely because they involve so much speculation about congressional intent. *Miccosukee Tribe,* 619 F.3d at 1299. Thus, when Congress passes two statutes that may touch on the same subject, we give effect to both unless doing so would be impossible. *J.E.M. Ag Supply, Inc. v. Pioneer Hi–Bred Int'l, Inc.,* 534 U.S. 124, 143–44, 122 S. Ct. 593, 151 L. Ed. 2d 508 (2001); *Morton v. Mancari,* 417 U.S. 535, 551, 94 S. Ct. 2474, 41 L.Ed.2d 290 (1974); *Posadas,* 296 U.S. at 503, 56 S. Ct. 349. We must "assiduously attempt" to construe two statutes in

harmony before concluding that one impliedly repeals the other. *Miccosukee Tribe,* 619 F.3d at 1299 (quoting *Tug Allie–B, Inc. v. United States,* 273 F.3d 936, 952 (11th Cir. 2001)).

The Supreme Court has instructed that repeals by implication may only be found when Congress's intent to repeal is "clear and manifest." *Rodriguez v. United States,* 480 U.S. 522, 524, 107 S. Ct. 1391, 94 L. Ed. 2d 533 (1987) (quoting *United States v. Borden Co.,* 308 U.S. 188, 198, 60 S. Ct. 182, 84 L. Ed. 181 (1939)). We may infer clear and manifest intent from the existence of an "irreconcilable conflict." *Id.* (quoting *Kremer v. Chem. Constr. Corp.,* 456 U.S. 461, 468, 102 S. Ct. 1883, 72 L. Ed. 2d 262 (1982)); *see Wood v. United States,* 41 U.S. 342, 363, 16 Pet. 342, 10 L. Ed. 987 (1842) ("[T]here must be a positive repugnancy between the provisions of the new law, and those of the old; and even then, the old law is repealed by implication, only *pro tanto,* to the extent of the repugnancy."). We also may find an implied repeal when "the later act covers the whole subject of the earlier one and is clearly intended as a substitute." *Posadas,* 296 U.S. at 503, 56 S. Ct. 349; *accord Town of Red Rock v. Henry,* 106 U.S. 596, 601, 1 S. Ct. 434, 27 L. Ed. 251 (1883).  Still, it is not enough to establish that a later law covers some or even all of the cases provided for by an earlier law, because the subsequent statute "may be merely affirmative, or cumulative or auxiliary." *Wood,* 41 U.S. at 362–63, 41 U.S. 342.

*Ray v. Spirit Airlines, Inc.*, 767 F.3d 1220, 1225 (11th Cir. 2014).

OLF cites *Katz v. Gerardi*, 552 F.3d 558 (7th Cir. 2009), in support of its contention that § 1445(c) was repealed as to CAFA cases.  There, the Seventh Circuit, rejecting the Ninth Circuit's holding in *Luther v. Countrywide Home Loans Servicing LP*, 533 F.3d 1031, 1034 (9th Cir. 2008), held that the anti-removal provision in section 22(a) of the Securities Act of 1933, 15 U.S.C. § 77v(a), must yield to the CAFA removal statute because the two "are incompatible."    552 F.3d at 561. However, *Katz*'s reasoning was based on the fact that § 77v(a) and the exceptions to CAFA removal found in § 1453(d) both addressed the same specific subject matter,

the non-removability of certain securities class actions.  *See id.* at 561-62 ("Section 22(a) covers only securities actions, but it includes all securities actions—single-investor suits as well as class actions, small class actions as well as large multi-state ones. The 2005 Act, by contrast, covers only large, multi-state class actions…The language of the 2005 Act [CAFA]…tells us how the new removal rule applies to **corporate and securities actions**…Claims listed in § 1453(d) are not removable. Other **securities** class actions are removable if they meet the requirements of the 2005 Act (100 investors, $5 million in controversy, minimal diversity).  To read § 22(a) as Katz does would be to make most of § 1453(d) pointless…*Luther* failed to recognize that § 22(a) of the 1933 Act is not a subset of the 2005 Act.  More importantly, *Luther* did not appear to understand that § 1453(d) tells us how the 2005 Act affects **securities cases**: the ninth circuit did not analyze this language or even acknowledge its existence.  We therefore disagree with *Luther* and hold that **securities** class actions covered by the 2005 Act are removable, subject to the exceptions in § 1332(d)(9) and § 1453(d)." (emphasis added)).  OLF cites no provision of CAFA that similarly addresses "workmen's compensation laws."[8]

---

[8] OLF also cites to *Passarella v. Ginn Co.*, 637 F. Supp. 2d 352 (D.S.C. 2009), which held that "§ 1453 clearly provides a right of removal for…class actions, which does not appear to be qualified in any way save for the procedural requirements spelled out in that statute, in 28 U.S.C. § 1446, and in the limited exceptions contained in § 1453(d)."  637 F. Supp. 2d at 355.  However, the undersigned is not convinced that, by specifying certain exceptions to removal within it, CAFA's removal statue intended to categorically exclude all other exceptions to removal.  The exceptions set forth in § 1453(d) were intended to apply to "th[at] section" only, while the exceptions in § 1445, located within the same chapter of Title 28 of United States

"It is a basic principle of statutory construction that a statute dealing with a narrow, precise, and specific subject is not submerged by a later enacted statute covering a more generalized spectrum. Where there is no clear intention otherwise, a specific statute will not be controlled or nullified by a general one, regardless of the priority of enactment. The reason and philosophy of the rule is, that when the mind of the legislator has been turned to the details of a subject, and he has acted upon it, a subsequent statute in general terms, or treating the subject in a general manner, and not expressly contradicting the original act, shall not be considered as intended to affect the more particular or positive previous provisions, unless it is absolutely necessary to give the latter act such a construction, in order that its words shall have any meaning at all." *Radzanower v. Touche Ross & Co.*, 426 U.S. 148, 153 (1976) (citation, quotation, and footnotes omitted). In *Radzanower*, the Court was called on "to determine which venue provision controls in the event a national banking association is sued in a federal court for allegedly violating the Securities Exchange Act of 1934: the broad venue provision of the Securities Exchange Act, which allows suits under that Act to be brought in any district where the defendant may be found, or the narrow venue provision of the National Bank Act, which allows national banking associations to be sued only in the district where they are established." *Id.* at 149-50. In holding "that the narrowly drawn, specific venue provision of the National Bank Act must prevail

---

Code, categorically bars removal of four different kinds of actions without any express limitation of their application to certain sections, chapters, titles, etc.

over the broader, more generally applicable venue provision of the Securities Exchange Act[,]" the Court reasoned as follows:

> When Congress enacted the narrow venue provisions of the National Bank Act, it was focusing on the particularized problems of national banks that might be sued in the state or federal courts. When, 70 years later, Congress enacted the Securities Exchange Act, its focus was on the objective of promoting fair dealing in the securities markets, and it enacted a general venue provision applicable to the broad universe of potential defendants subject to the prohibitions of that Act. Thus, unless a "clear intention otherwise" can be discerned, the principle of statutory construction…counsels that the specific venue provisions of s 94 are applicable to the respondent bank in this case.
>
> …
>
> [H]ere the basic purposes of the Securities Exchange Act can be fairly served by giving full effect to the provisions of 12 U.S.C. s 94. The primary purpose of the Securities Exchange Act was not to regulate the activities of national banks as such but "(t)o provide fair and honest mechanisms for the pricing of securities (and) to assure that dealing in securities is fair and without undue preferences or advantages among investors . . . ." H.R. Rep. No. 94-229, p. 91 (1975). [The] venue provision, s 27, was intended to facilitate that goal by enabling suits to enforce rights created by the Act to be brought wherever a defendant could be found. The venue provision of the National Bank Act, s 94, was intended, on the other hand, "for the convenience of those (banking) institutions, and to prevent interruption in their business that might result from their books being sent to distant counties . . . ." *Charlotte Nat. Bank v. Morgan*, 132 U.S. 141, 145, 10 S. Ct. 37, 38, 33 L. Ed. 282, 284, *quoted in Mercantile Nat. Bank v. Langdeau*, 371 U.S., at 561-562, n. 12, 83 S. Ct., at 524, 9 L. Ed. 2d, at 528.
>
> By allowing suits against national banks to be brought only pursuant to s 94, the purposes of that section will obviously be served. Yet application of s 94 will not "unduly interfere" with the operation of the Securities Exchange Act. *See Gordon v. New York Stock Exchange*, 422 U.S. 659, 686, 95 S. Ct. 2598, 2613, 45 L. Ed. 2d 463, 481. Section 94 will have no impact whatever upon the vast majority of lawsuits

brought under that Act. In the tiny fraction of litigation where its effect will be felt, it will foreclose nobody from invoking the Act's provisions. Members of the investing public will still be free to bring actions against national banks under the Act. While suits against this narrow and infrequent category of defendants will have to be brought where the defendant is established, that is hardly an insurmountable burden in this day of easy and rapid transportation. Since it is possible for the statutes to coexist in this manner, they are not so repugnant to each other as to justify a finding of an implied repeal by this Court. It is simply not necessary that s 94 be repealed in part in order to make the Securities Exchange Act work.

Moreover, it cannot be said either that the later act covers the whole subject of the earlier one and is clearly intended as a substitute, or that the intention of the legislature to repeal is clear and manifest. The Securities Exchange Act of 1934 covers a "subject" quite different from the National Bank Act. The 1934 Act was enacted primarily to halt securities fraud, not to regulate banks. Indeed, banks were specifically exempted from many provisions of the securities laws, and Congress almost contemporaneously enacted other specific legislation dealing with the problems arising from banks' involvement in the securities business. The passage of that legislation and the exemption of national banks from important provisions of the securities laws suggest, if anything, that Congress was reaffirming its view that national banks should be regulated separately by specific legislation applying only to them. And there is nothing in the legislative history of the Securities Exchange Act to support the view that Congress in enacting it gave the slightest consideration to the Pro tanto repeal of s 94, let alone to indicate that Congress consciously abandoned its prior policy, or that its intent to repeal s 94 Pro tanto was clear and manifest.

*Id.* at 153-58 (footnotes and some citations and quotations omitted).

*Radzanower*'s reasoning is instructive here. In granting general diversity jurisdiction to federal courts under 28 U.S.C. § 1332(a), "Congress extend[ed] the benefits and safeguard of federal courts to 'provide a separate forum for out-of-state citizens against the prejudices of local courts and local juries.'" *Holston*

*Investments, Inc. B.V.I. v. LanLogistics Corp.*, 677 F.3d 1068, 1070 (11th Cir. 2012) (per curiam) (quoting S. Rep. No. 1830, at 3 (1958), *reprinted in* 1958 U.S.C.C.A.N. 3099, 3101–02).   By permitting removal on the basis of diversity jurisdiction, *see* 28 U.S.C. § 1441(a), Congress thus determined that, at least when the appropriate conditions are met under § 1332(a), a defendant's right to access "the benefits and safeguard of federal courts" should generally outweigh a plaintiff's right to choose a state forum to bring only state causes of actions.

In 2005, "Congress enacted CAFA to address inequitable state court treatment of class actions and to put an end to certain abusive practices by plaintiffs' class counsel." *Lowery*, 483 F.3d at 1193.   "CAFA s[ought] to address these inequities and abusive practices by, among other things, broadening federal diversity jurisdiction over class actions with interstate implications…by establishing lower threshold requirements for jurisdiction and abrogating long-established precedent." *Id.*   In other words, the legislative purpose of CAFA removal is the same as that underlying diversity removal in general – providing defendants the option of accessing "the benefits and safeguards of federal courts" to litigate state law claims.

Section 1445(c), however, was enacted in 1958 "[t]o restrict diversity jurisdiction and to stop the removal of compensation cases which were increasing the already overburdened docket of the federal courts" *Jones v. Roadway Exp.*, Inc., 931 F.2d 1086, 1091 (5th Cir. 1991) (citing S. Rep. No. 1830, 85th Cong., 2nd Sess., *reprinted in* 1958 U.S. Code Cong. & Admin. News 3099, 3103–06).   *Accord Trevino*

*v. Ramos*, 197 F.3d 777, 781 (5th Cir. 1999); *Horton v. Liberty Mut. Ins. Co.*, 367 U.S. 348, 350–51 (1961) ("[T]he purpose and effect of the 1958 amendment were to reduce congestion in the Federal District Court's partially caused by the large number of civil cases that were being brought under the long-standing $3,000 jurisdictional rule. This effort to reduce District Court congestion followed years of study by the United States Judicial Conference and the Administrative Office of the United States Courts, as well as by the Congress."). Targeting a discrete category of claims, § 1445(c) is an exception to removal jurisdiction that reflects "a strong congressional policy that looks upon compensation cases— vitally important as they are to the victims of industrial disease and accident— as being of such a technical statutory form that they have little real business in a federal court." *Kay v. Home Indem. Co.*, 337 F.2d 898, 901 (5th Cir. 1964).[9] Thus, Congress found that the general policies underlying diversity removal should not apply to claims "arising under [state] workmen's compensation laws," and that a plaintiff's choice of a state forum for bringing such claims should be preserved. *See Bryan v. Liberty Mut. Ins. Co.*, 415 F.2d 314, 315 (5th Cir.) ("[T]he provisions of 28 U.S.C.A. § 1445(c), which forbids the removal of workmen's compensation cases from state to Federal Courts,…reflect[] 'a strong congressional policy that where the state court has been utilized by one of the parties in the state compensation machinery, the case should remain in the state court for its ultimate disposition'." (quoting *Kay v. Home Indem.*

---

[9] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

*Co.*, 337 F.2d 898, 902 (5th Cir. 1964)), *modified on other grounds*, 418 F.2d 486 (5th Cir. 1969); *Armistead v. C & M Transp., Inc.*, 49 F.3d 43, 46 (1st Cir. 1995) ("Section 1445(c)…reflects a congressional concern for the states' interest in administering their own workers' compensation schemes, the burdens on injured claimants of maintaining a federal court suit, and the incidence of federal court congestion.").[10]

Given that Congress expressly chose almost fifty years ago to exempt workers' compensation defendants from the "benefits and safeguards of federal courts" in the case of general diversity removal, it is far from "clear and manifest" that state workers' compensation claims obtain any more "real business" being in federal court simply because they are asserted under the procedural vehicle of a class action. Accordingly, the undersigned finds that § 1445(c)'s removal bar applies to CAFA removals.

## 2. *The Class Claims Arise Under Alabama's Workmen's Compensation Law*

Because § 1445(c) is an "express statutory exception" to federal jurisdiction, *see Breuer v. Jim's Concrete of Brevard, Inc.*, 538 U.S. 691, 696 (2003) (citing provisions of § 1445 as examples of "express exceptions" to removal under § 1441(a)), the Plaintiffs bear the burden of demonstrating that this exception applies. *See Evans v. Walter Indus., Inc.*, 449 F.3d 1159, 1164 (11th Cir. 2006) ("[W]hen a party seeks to avail itself of an express statutory exception to federal jurisdiction granted

---

[10] Indeed, the policy underlying § 1445(c) is so strong that courts have since recognized its application "regardless of whether jurisdiction is based on diversity or federal question." *Sherrod v. Am. Airlines, Inc.*, 132 F.3d 1112, 1118–19 (5th Cir. 1998) (adopting reasoning of *Humphrey v. Sequentia, Inc.*, 58 F.3d 1238 (8th Cir. 1995)).

under CAFA,…we hold that the party seeking remand bears the burden of proof with regard to that exception. (citing *Breuer*, 538 U.S. at 697-98 (At one time, 28 U.S.C. "§ 1441 provided simply that any action within original federal subject-matter jurisdiction could be removed…[L]ater, however, it was amended into its present form, requiring any exception to the general removability rule to be express. See Act of June 25, 1948, § 1441(a), 62 Stat. 937 (authorizing removal over civil suits within the district courts' original jurisdiction '[e]xcept as otherwise expressly provided by Act of Congress'); see also 28 U.S.C. § 1441 (historical and revision notes). Since 1948, therefore, there has been no question that whenever the subject matter of an action qualifies it for removal, the burden is on a plaintiff to find an express exception."))). Nevertheless, this Circuit has held that, in light of the policies underlying § 1445(c), courts should not "strain to find a way to entertain workmen's compensation suits." *Kay*, 337 F.2d at 901.

In *Reed v. Heil Co.*, 206 F.3d 1055 (11th Cir. 2000), the Eleventh Circuit Court of Appeals addressed for the first time the meaning of the phrase "arising under…workmen's compensation laws" as used in § 1445(c) in finding unremovable a cause of action under Alabama's statute barring retaliation against employees who file workers' compensation claims, Ala. Code § 25–5–11.1.[11] The court reasoned as follows:

---

[11] Indeed, at present *Reed* appears to be "[t]he only published decision of the Eleventh Circuit known to have addressed the scope of a remand under Section 1445(c)…" *Lamar v. Home Depot*, 907 F. Supp. 2d 1311, 1312 (S.D. Ala. 2012) (Steele, C.J.).

Alabama's proscription of retaliatory discharges is codified as part of its workers' compensation provisions. *See generally* Ala. Code § 25–5 (1999). Alabama courts have construed a general release of claims related to a workplace injury to bar a subsequent retaliatory discharge action. *See Ex parte Aratex Servs., Inc.,* 622 So. 2d 367, 369 (Ala. 1993). The Alabama Supreme Court has described the purpose of section 25–5–11.1 as to ensure that employees are "able to exercise [their] right to be compensated for work-related injuries in an unfettered fashion without being subject to reprisal." *McClain v. Birmingham Coca–Cola Bottling Co.,* 578 So.2d 1299, 1301 (Ala. 1991). This, the court reasoned, was necessary "[i]n order for the beneficent goals of the worker's compensation chapter to be realized." *Id.* Otherwise, the threat of losing one's job would discourage workers from filing injury compensation claims. *See id.*

Understanding the Alabama legislature's intentions and the state court's treatment of the retaliatory discharge cause of action is helpful; the Alabama courts and legislature, however, cannot decide for us whether the retaliatory discharge provision arises under the workers' compensation laws within the meaning of section 1445(c). Because section 1445 is a federal jurisdiction statute with nationwide application, federal law governs its interpretation. *See Grubbs v. General Elec. Credit Corp.,* 405 U.S. 699, 705, 92 S. Ct. 1344, 1349, 31 L. Ed. 2d 612 (1972); *Humphrey v. Sequentia, Inc.,* 58 F.3d 1238, 1245 (8th Cir. 1995); *Arthur v. E.I. DuPont de Nemours & Co.,* 58 F.3d 121, 125 (4th Cir. 1995); *Jones v. Roadway Express, Inc.,* 931 F.2d 1086, 1092 (5th Cir. 1991).

The only two circuits that have faced this issue have held that a cause of action created by a state legislature for workers discharged because they file workers' compensation claims does indeed "arise" under a state's "workers' compensation laws" for the purposes of section 1445(c). *See Humphrey,* 58 F.3d at 1245–46; *Jones,* 931 F.2d at 1091–92. *Humphrey* and *Jones* both interpreted the words "arising under" to have the same meaning in section 1445(c) as in section 1331, which governs federal question jurisdiction.

The *Jones* court concluded that Texas's retaliatory discharge statute arises under the state's workers' compensation laws because it "enables injured workers to exercise their rights under that scheme." 931 F.2d at

1092. The court determined that the legislature enacted the retaliatory discharge statute "to safeguard its workers' compensation scheme" and noted that "were it not for the workers' compensation laws, [the retaliatory discharge statute] would not exist." *Id.*

The *Humphrey* court followed different reasoning to reach the same conclusion. The court held that, "[u]nder the plain meaning of the statute, where a state legislature enacts a provision within its workers' compensation laws and creates a specific right of action, a civil action brought to enforce that right of action is, by definition, a civil action arising under the workers' compensation laws of that state." *Humphrey*, 58 F.3d at 1246. "Therefore," the court concluded, "§ 1445(c) applies." *Id.* In reaching this conclusion, the court rejected the notion that a tort-like claim must lie beyond section 1445(c)'s meaning of workers' compensation laws.

Cases focusing on whether *common law* causes of action "arise under" workers' compensation laws for section 1445(c) purposes are inapposite. The Seventh Circuit has held that a court-created tort remedy for employees discharged in retaliation for filing workers' compensation claims in Illinois does not arise under the state's workers' compensation laws. *See Spearman v. Exxon Coal USA, Inc.,* 16 F.3d 722 (7th Cir. 1994). The *Spearman* court explained that when the Illinois legislature added an anti-retaliation clause to its workers' compensation law, it chose not to create a private remedy. *See id.* at 724. Three years later, however, the Illinois courts acted on their own, holding that workers' compensation was one of the substantial public policies that could underlie a common law claim for wrongful termination in violation of public policy. *See Kelsay v. Motorola, Inc.,* 74 Ill.2d 172, 23 Ill. Dec. 559, 384 N.E.2d 353 (Ill. 1978). As *Spearman* notes, subsequent Illinois cases made clear that the wrongful termination tort claim is independent of the state workers' compensation law. *See* 16 F.3d at 725 (citing *Rubenstein Lumber Co. v. Aetna Life & Cas. Co.,* 122 Ill. App.3d 717, 78 Ill. Dec. 541, 462 N.E.2d 660, 661–62 (Ill. App. Ct. 1st Dist.1984), and *Suddreth v. Caterpillar Tractor Co.,* 114 Ill. App.3d 396, 70 Ill. Dec. 329, 449 N.E.2d 203 (Ill. App. Ct. 2d Dist.1983)). In contrast to Alabama, for example, a settlement discharging an employer from all liability under the workers' compensation laws does

not bar a retaliatory discharge suit. *See id.* (citing *Suddreth,* 114 Ill. App.3d 396, 70 Ill. Dec. 329, 449 N.E.2d 203).[12]

---

12    At first blush, it would seem odd to distinguish Alabama's workers' compensation retaliatory discharge cause of action from the Illinois cause of action in *Spearman*. Like the Illinois anti-retaliation statute, the express terms of Ala. Code § 25-5-11.1 simply prohibit retaliatory conduct without stating a remedy or otherwise specifying that an aggrieved party may bring a cause of action. As Illinois courts did with that state's statute, the Alabama Supreme Court recognized a private cause of action under § 25-5-11.1 notwithstanding the failure to include such a provision. *See Caraway v. Franklin Ferguson Mfg. Co.*, 507 So. 925, 925-26 (Ala. 1987) ("The defendant moved to dismiss Caraway's complaint on the grounds that Ala. Code 1975, § 25-5-11.1 (effective February 1, 1985), fails to provide damages for wrongful dismissal. Without a provision for damages, the defendant argues, there is no cause of action; therefore, the defendant says, Caraway failed to state a claim upon which relief could be granted. We reverse and remand… The fact that § 25-5-11.1 does not delineate what damages may be awarded in the event of a violation of the statute has no bearing on the existence of a cause of action. The clear intent of the legislature in enacting § 25-5-11.1 was to prohibit the dismissal of an employee merely because that employee claimed Workmen's Compensation benefits or filed a written notice of a safety violation by the employer. The absence from the statute of a provision for damages is not a basis for dismissing the plaintiff's complaint on the grounds that she has failed to state a claim upon which relief could be granted. The cause of action is clearly established by § 25-5-11.1. []Although § 25-5-11.1 omits specific reference to damages for violation of its provisions, damages can be awarded in accordance with the general law of torts."); *Cont'l Eagle Corp. v. Mokrzycki*, 611 So. 2d 313, 320 (Ala. 1992) ("Although § 25–5–11.1 does not refer to the damages available for violation of its provisions, this Court has construed that section to permit a recovery of damages in accord with the general law of torts." (citing *Caraway*, 507 So.2d at 926)).

However, the Illinois retaliatory discharge claim was a remedy created by the Illinois courts "on their own" after the legislature chose not to create a private remedy in enacting its workers' compensation anti-retaliation clause. *See Reed*, 206 F.3d at 1059; *Spearman*, 16 F.3d at 724–25 ("Illinois did not add an anti-retaliation component to its statutes until 1975, see 820 ILCS 305/4(h), and even then it omitted any private remedy. *Kelsay*, decided in 1978, is among the first cases in the nation to create a remedy in tort for retaliatory discharge."). The history of Ala. Code § 25-5-11.1, on the other hand, indicates precisely the reverse, as § 25-5-11.1, effective February 1, 1985, was enacted by the Alabama legislature in response to the Alabama Supreme Court's refusal to recognize a common law worker's compensation retaliatory discharge claim. *See Twilley v. Daubert Coated Prod., Inc.*, 536 So. 2d 1364, 1367 (Ala. 1988) ("When this Court did not carve out a public policy exception to the 'employment at will' doctrine in *Meeks v. Opp Cotton*

Similarly, the Fourth Circuit has held that an intentional tort action, brought when employers act with the deliberate intent to injure workers, does not arise under state workers' compensation laws for section 1445(c) purposes. *Arthur,* 58 F.3d at 125. Although West Virginia had codified the deliberate intent cause of action, the Fourth Circuit determined that it "has always been considered a creature of the common law." *Id.* at 127. The Fourth Circuit noted that an intentional injury claim had little in common with workers' compensation claims as understood in 1958, when Congress passed section 1445(c). The court also determined that an intentional injury claim is not closely related to and does not further the overall purposes of West Virginia's workers' compensation system. *Id.* The court noted "the sharp distinction between a retaliatory discharge claim and [an intentional injury] claim. The action for retaliatory discharge is integrally related to the just and smooth operation of the workers' compensation system; it ensures that those seeking compensation benefits are not scared out of making claims.... This cause of action therefore aids the overriding purpose of providing fixed, no-fault benefits for workplace injuries." *Id.* at 128.

Because the causes of action at issue in *Spearman* and *Arthur* are so different from Alabama's retaliatory discharge statute, those cases have little persuasive force here. Instead, taking into account the history and operation of section 25–5–11.1 and following the guidance of *Jones* and *Humphrey,* we conclude that for the purposes of section 1445(c), Alabama's retaliatory discharge cause of action arises under that state's workers' compensation laws.

Section 25–5–11.1 is an integral part of Alabama's workers' compensation regime. Codified together with the remaining workers' compensation laws, it was passed to enhance the efficacy of the overall workers' compensation system. The retaliatory discharge cause of action increases workers' willingness to file compensation claims, and it limits employers' ability to discourage them.  In so doing, section 25–

---

*Mills*, 459 So. 2d 814 (Ala. 1984), the legislature passed what is carried in the Code as § 25-5-11.1.  Because this was remedial legislation, intended to prevent an employee's termination 'solely because the employee [had] instituted or maintained [an] action against the employer to recover worker's compensation benefits,' we apply the rule that the statute is to be construed liberally to effect its purposes…").

> 5–11.1 encourages prompt and thorough medical attention for workplace injuries. Under the plain meaning of section 1445(c), claims raised under section 25–5–11.1 arise under Alabama's workers' compensation laws.

*Reed*, 206 F.3d at 1058–60 (footnote omitted).

*Reed*'s reasoning is narrow and provides few clear rules relevant to the present issue. However, *Reed* stated that it reached its conclusion "taking into account the history and operation of section 25–5–11.1 and following the guidance of *Jones* and *Humphrey*…" *Id.* at 1060. The undersigned will attempt to do the same here with the statutes at issue.

As to the history and operation of § 25-5-86(2), it must first be noted that this statute actually consists of two separate provisions: the "exemption" portion (providing that workers' compensation benefits are "exempt from seizure or sale or garnishment for the payment of any debt or liability") and the "anti-alienation" portion (providing that workers' compensation benefits "shall not be assignable"). The Plaintiffs' Class Claims are premised on the "anti-alienation" portion of the statute. (*See* Doc. 1-1 at 6, ¶ 13 ("Oasis has accepted an assignment from Mr. Marquez, Mr. Dixon, and Class Members of their claims for compensation under the Alabama Workers' Compensation Act…These facts describe conduct prohibited by Ala. Code §§ 25-5-231 and 25-5-86(2).").   The Alabama Supreme Court has recognized that the "exemption" portion of § 25-5-86(2) was enacted to protect workers' compensation claimants by ensuring that benefits would be used for their intended purpose to support injured workers and their dependents. *See Ex parte McCall*, 596 So. 2d 4, 6 (Ala. 1992) ("It is apparent that the [Workmen's Compensation] Act is designed to financially aid an employee and/or his dependents in the event of a job-related injury or death. Obviously, the purpose of the

exemption portion of the Act is to prevent creditors from seizing or garnishing benefits owned by an injured employee or his dependents." (citation and quotation omitted)); *Ex parte Beshears*, 669 So. 2d 148, 150 (Ala. 1995) ("[T]he stated policy of preserving workers' compensation benefits for the injured worker and the worker's dependents is not abrogated by the fact that the injured worker owes a criminal fine. To disallow the exemption merely because the state was the creditor would undermine the intention of the legislature in protecting workers' compensation benefits for the injured worker and the worker's dependents."). This rationale can easily be applied to the "anti-alienation" provision as well. *Cf. Ex parte Crean*, 782 So. 2d 298, 302 (Ala. 2000) ("Manifestly, the legislature adopted…all of § 25–5–86 to protect the injured employee." (applying Ala. Code § 25-5-86(1)). The fact that Alabama has criminalized accepting assignments of workers' compensation benefits is further evidence of the "anti-alienation" provision's protective intent. *See* Ala. Code § 25-5-231. Thus, like § 25–5–11.1, §§ 25-5-86(2) and 25-5-232 appear to be "integral part[s] of Alabama's workers' compensation regime." *Reed*, 206 F.3d at 1060.

Turning to "the guidance of *Jones* and *Humphrey*," the *Reed* panel noted that *Jones* and *Humphrey* "followed different reasoning to reach the same conclusion[,]" *id.* at 1059, and it appears that those conclusions that carried more persuasive force than the respective reasoning of their cases. *See id.* ("The only two circuits that have faced this issue have held that a cause of action created by a state legislature for workers discharged because they file workers' compensation claims does indeed 'arise' under a state's 'workers' compensation laws' for the purposes of section 1445(c)." (citing *Jones* and *Humphrey*)). As OLF correctly notes, though, there is an

important distinction between the retaliation claims at issue in *Reed*, *Jones*, and *Humphrey*, and the Plaintiffs' Class Claims for declaratory judgment, accounting, willfulness/wantonness, and injunctive relief.   Each of the retaliation claims was (at least as *Reed* saw them) "a cause of action created by a state legislature."   Here, the Plaintiffs have cited no law indicating that either Ala. Code §§ 25-5-231 or 25-5-86(2) creates a private cause of action.   Indeed, with one exception, the Plaintiffs do not contend that they do, instead asserting that violations of those statutes are "essential elements of each cause of action" in the Class Claims.[13]   (*See* Doc. 24 at 4 – 5).   Because "the right to relief necessarily depends on resolution of a substantial

---

[13] Despite their representations that violations of §§ 25-5-231 and 25-5-86(2) are merely "elements" of their Class Claims, the Plaintiffs' reply also characterizes Count IV as alleging "wanton and/or willful *violations of Sections 25-5-86(2) and 25-5-231 of the Act*[,]" with "[t]he allegations of wanton and willful conduct being necessary for recovery of punitive damages" under Ala. Code § 6-11-20(a).   (Doc. 24 at 11).   The undersigned cannot accept this characterization of Count IV as pled in the FACAC.   Count IV is clearly labeled "Claims for Willfulness and Wantonness," and its substantive wording is more indicative of willfulness and wantonness being asserted as causes of action, rather than simply as damages enhancers.   *Compare Lemley v. Wilson*, 178 So. 3d 834, 841–42 (Ala. 2015) (per curiam) ("To establish wantonness, the plaintiff must prove that the defendant, with reckless indifference to the consequences, consciously and intentionally did some wrongful act or omitted some known duty." (quotation omitted)), *with* (Doc. 1-1 at 14, ¶¶ 48 – 49 ("Oasis acted intentionally, knowingly, willfully, contumaciously, and wantonly by offering and entering into Purchase Agreements with customers and claiming a portion of their Alabama workers' compensation claims in violation of Ala. Code §§ 25-5-231 and 25-5-86(2).   Oasis had actual knowledge that its Purchase Agreements violated Ala. Code §§ 25-5-231 and 25-5-86(2), and engaged in a pattern and practice of offering and entering into Purchase Agreements with a conscious disregard for the rights of its customers, knowing that this conduct would likely or probably result in injuries to its customers and/or intending for said injuries to result…As a proximate result of Oasis's misconduct, Plaintiff Marquez and the Injunctive Sub-Class have suffered actual damages in that they have incurred unnecessary interest obligations which impact the prosecution of their workers' compensation claims, and Plaintiff Dixon and the Damages Sub-Class have suffered actual damages in that they incurred unnecessary interest obligations and paid amounts to Oasis pursuant to a void contract.").

question of workers' compensation law[,]" the Plaintiffs argue, the Class Claims thus "arise under" Alabama workers' compensation law.  (*See id.* at 4 – 6 (citing *Grant v. Davey Tree Expert Co.*, 8 F. Supp. 2d 1328, 1329 (S.D. Ala. 1998) (Hand, J.) (" '[A] civil action "arises under" the workers' compensation laws if the workers' compensation laws create the cause of action, **or if the vindication of the claim necessarily turns on the construction of the state's workers' compensation laws**." (emphasis Plaintiffs') (quoting *Lewis v. Rhodes, Inc.*, 968 F. Supp. 633, 636 (N.D. Ala. 1997) (Blackburn, J.) (integrating into § 1445(c) the well-established "arising under" standards for § 1331 as stated in *Merrell Dow Pharmaceuticals Inc. v. Thompson*, 478 U.S. 804 (1986)))).

The one common factor the *Reed* panel noted was that *Jones* and *Humphrey* "both interpreted the words 'arising under' to have the same meaning in section 1445(c) as in section 1331, which governs federal question jurisdiction."  *Reed*, 206 F.3d at 1059.[14]  *Jones*'s interpretation of "arising under" was largely limited to observing that "in analyzing the statute that grants federal question jurisdiction, 28 U.S.C. § 1331,…a suit arises under the law that creates the cause of action."  *Jones*, 931 F.2d at 1092.  *Humphrey*, however, provided a more in-depth interpretation of

---

[14]   Though not explicitly holding as such, *Spearman* also found § 1331 analogous to § 1445(c), stating: "That workers' compensation law is a premise of the tort does not mean that the tort 'arises under' the workers' compensation laws, any more than a state tort based on the violation of a federal safety standard 'arises under' that standard for purposes of the federal question jurisdiction in 28 U.S.C. § 1331." *Spearman*, 16 F.3d at 725.  The Fourth Circuit made no such similar analogy in *Arthur* and indeed devoted little attention to the meaning of "arising under" as used in § 1445(c), instead holding that the West Virginia anti-retaliation statute at issue was not a "workmen's compensation law" for purposes of § 1445(c).  Having reached this conclusion, *Arthur* then conclusorily held: "It follows that the [common law] claim (as circumscribed by [the anti-retaliation statute]) does not arise under 'workmen's compensation laws.' "  *Arthur*, 58 F.3d at 128.

"arising under," noting:

> In *Gully v. First Nat'l Bank,* 299 U.S. 109, 112, 57 S. Ct. 96, 97, 81 L. Ed. 70 (1936), the Supreme Court considered whether the action in dispute arose under federal law for purposes of applying 28 U.S.C. §§ 1331 and 1441 (district court's original and removal jurisdiction of actions "arising under" the Constitution, laws, or treaties of the United States).   The Court explained:
>
>> How and when a case arises "under the Constitution or laws of the United States" has been much considered in the books. Some tests are well established. To bring a case within the statute, a right or immunity created by the Constitution or laws of the United States must be an element, and an essential one, of the plaintiff's cause of action.... The right or immunity must be such that it will be supported if the Constitution or laws of the United States are given one construction or effect, and defeated if they receive another.... A genuine and present controversy, not merely a possible or conjectural one, must exist with reference thereto ... and the controversy must be disclosed upon the face of the complaint, unaided by the answer or by the petition for removal.... Indeed, the complaint itself will not avail as a basis of jurisdiction in so far as it goes beyond a statement of the plaintiff's cause of action and anticipates or replies to a probable defense.
>
> *Id.* at 112–13, 57 S. Ct. at 97–98 (citations omitted). Applying these principles to the present case, we hold that plaintiff's action in state court "arose under" Missouri's workers' compensation laws because the right established by [Missouri's anti-retaliation statute] is an essential element of plaintiff's claim, the success of plaintiff's claim will depend on how [the statute] is construed, a genuine and present controversy exists with reference to [the statute], and the controversy is disclosed upon the face of the complaint.

*Humphrey*, 58 F.3d 1238, 1245–46 (footnote omitted).   The Sixth Circuit has since adopted similarly reasoning, holding: "Applying the definition of 'arising under' from

§ 1331 to [§ 1445(c)] yields the following definition: A civil action arises under a state workmen's compensation law when either (1) the workmen's compensation law created the cause of action or (2) the plaintiff's right to relief necessarily depends on resolution of a substantial question of workmen's compensation law."   *Harper v. AutoAlliance Int'l, Inc.*, 392 F.3d 195, 202-03 (6th Cir. 2004).

After holding that a Michigan workers' compensation retaliation claim was not a cause of action "created by" the state's workers' compensation law, *see id.* at 203-05, *Harper* held that the cause of action also did not "arise under" Michigan's Worker's Disability Compensation Act by virtue of necessarily depending on resolution of a substantial question of workers' compensation law, noting that the claim "does not implicate the administrative or remedial mechanisms of that statutory scheme, require courts to interpret the statute, or seek an award of compensation for personal injury that causes a diminished wage-earning capacity, which is the only type of compensation that the statute affords…As the Seventh Circuit explained regarding a similar tort-based retaliation claim under Illinois law, '[a] claim of retaliatory discharge may be adjudicated without any inquiry into the meaning of the workers' compensation laws; the question for decision usually is the employer's motive for adverse action rather than the entitlement to compensation for injury on the job.' "   *Id.* at 205 (quoting *Spearman*, 16 F.3d at 725).

*Reed*, however, suggests that the Eleventh Circuit would adopt a more expansive view of the "substantial question" definition of "arising under" than either *Harper* or *Spearman*, one more akin to the "essential element analysis" in *Humphrey*.   First, as noted previously, the *Reed* panel found *Spearman* to "have little persuasive force" on the issue at hand.   206 F.3d at 1060.   Moreover, in dicta,

the panel stated:

> Even if there were a need to look beyond the plain meaning of section
> 1445(c),[15] the Senate Report for the statute supports our holding or is
> at worst ambiguous. *See* S. Rep. No. 1830 (1958). Congress passed
> section 1445(c) as part of a bill that also raised the minimum amount in
> controversy and imposed other restrictions on diversity jurisdiction.
> The "Statement" section of the report concentrates exclusively on
> easing the workload of the federal courts. *See id.* at 3100–01. The
> section of the report concerning the workers' compensation provisions
> also focuses on the increased case load caused by the removal of
> workers' compensation cases. *See id.* at 3103–06. In holding that
> retaliatory discharge claims in Alabama cannot be removed from state
> court because they arise under Alabama's workers' compensation laws,
> we further section 1445(c)'s apparent purpose of limiting the workload
> of the federal courts.
>
> One statement in the Senate Report may indicate that Congress was
> thinking only of streamlined, no-fault procedures to compensate
> employees for work-related injuries when it passed section 1445(c). The
> report notes that "[n]early all of the State statutes on workmen's
> compensation provide summary proceedings for the expeditions [sic]
> and inexpensive settlement of claims by injured workmen against the
> employer." *Id.* at 3106. That is a weak foundation, however, for a
> narrow reading of section 1445(c). The report only provides one
> example, venue provisions, of state rules that could be frustrated by
> removal to federal court. *See id.* The Senate Report expresses concern
> that litigating in a distant federal court will impose an undue burden
> on workers. *See id.* This concern, however, applies whether the worker
> is litigating about compensation for an injury or being fired for filing a
> compensation claim.

*Reed*, 206 F.3d at 1060 n.3.

In light of *Reed*'s rejection of *Spearman*'s analysis in favor of *Humphrey*'s, and

---

[15] Because it found that "section 1445(c)'s language [wa]s clear" as to Alabama's
retaliatory discharge statute, the *Reed* panel found that it did "not need the
legislative history for interpretive guidance" on the issue.   *Reed*, 206 F.3d at 1060
n.3.

its singular focus on "limiting the workload of the federal courts" as the purpose of § 1445(c), it is likely that the Eleventh Circuit would adopt a broader test of when a claim would "arise under" workers' compensation law than that applied in *Spearman* and *Harper*.    While the undersigned will not endeavor to define the precise boundaries of such a test, the undersigned finds that the Class Claims here do "arise under" Alabama workers' compensation law because violation of two provisions of that law is "an essential element of plaintiff's claim[s], the success of plaintiff's claim[s] will depend on how [the statutes are] construed, a genuine and present controversy exists with reference to [the statutes], and the controversy is disclosed upon the face of the complaint."    *Humphrey*, 58 F.3d at 1246.    Accordingly, the undersigned finds that the remainder of the Plaintiffs' motion to remand is due to be **GRANTED**.

## III.    <u>CONCLUSION</u>

Based on the foregoing analysis, the undersigned **RECOMMENDS** that the remainder of the Plaintiffs' motion to remand (Doc. 18) not previously disposed of (*see* Doc. 31) be **GRANTED** and that this case be **REMANDED** to the Circuit Court of Mobile County, Alabama, under 28 U.S.C. § 1447(c).[16]

## IV.    <u>NOTICE OF RIGHT TO FILE OBJECTIONS</u>

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file

---

[16] *See* 28 U.S.C. § 1453(c)(1) (with one inapplicable exception, "[s]ection 1447 shall apply to any removal of a case under this section…").

specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); S.D. Ala. GenLR 72(c).  The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice."   11th Cir. R. 3-1.   In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

**DONE** this the 27th day of June 2017.

*/s/ Katherine P. Nelson*
**KATHERINE P. NELSON**
**UNITED STATES MAGISTRATE JUDGE**